UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-273-GWU

HAZEL SIZEMORE,                                                                     PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Sizemore

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Sizemore

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Sizemore

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Hazel Sizemore, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity, diabetes mellitus, nervousness, anxiety/depression, coronary artery disease, and being status post knee surgery since January 24, 2004. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Sizemore retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 19-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 53 years, ninth grade education, and lack of relevant work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional restrictions. She: (1) could not stand more than two hours in an eight-hour day; (2) could not work with the public; and (3) could

perform only simple, routine, repetitive work with simple job instructions. (Tr. 297). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 297-8).

On appeal, this Court must determine whether the hypothetical factors are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Sizemore alleged disability in her July 21, 2003 SSI application due to diabetes, high blood pressure, poor eyesight, nervousness, and pain in her feet and legs. (Tr. 69).

Medical evidence from treating sources at Mary Breckenridge Healthcare, including the plaintiff's treating family physician, Dr. Roy Varghese, show that she was being treated with oral medications for diabetes and high blood pressure and that, while there was some initial difficulty in controlling these conditions (e.g. Tr. 114), by April, 2004 Dr. Varghese noted that the diabetes and hypertension were controlled (Tr. 225). The plaintiff was worked up for complaints of chest pain by a cardiologist, Dr. Srini Appakondu, but a myocardial infarction was ruled out in 2003 (Tr. 132, 258), an exercise stress test was negative for myocardial ischemia or arrhythmia (Tr. 242), an echocardiogram was normal in September, 2003 (Tr. 239), her blood pressure was noted to be "stable" in August 2004 (Tr. 264), and an "event monitor" in September, 2004 showed only sinus tachycardia and no arrhythmia (Tr.

255).  The most recent note from a cardiologist, Dr. Vidya Yalamanchi, indicated that the plaintiff was having difficulty tolerating her medication for blood pressure, and a slightly different dosing regimen was suggested.  (Tr. 253-4).  No functional restrictions were suggested, however.

A consultative physical examination was conducted by Dr. Bobby J. Kidd on October 28, 2003.  At that time, Mrs. Sizemore's complaints were high blood pressure, diabetes, an umbilical hernia, and pain in the lower back.  (Tr. 140).  Dr. Kidd's examination showed elevated blood pressure, but there was no hypertensive or diabetic retinopathy, no cyanosis, clubbing, or edema of the extremities, and that heart sounds were normal. (Tr. 141-2).  Mrs. Sizemore had a normal gait, no spasm or tenderness was noted in the back, she could bend forward 90 degrees at the waist, and stood on one leg at a time without difficulty.  (Tr. 142-3).  There were no neurological abnormalities.  (Tr. 144).  Dr. Kidd diagnosed exogenous obesity, diabetes, hypertension, and an umbilical hernia, but did not provide any functional restrictions.  (Id.).

Subsequently, Mrs. Sizemore fell off her front porch, fracturing her left knee, and underwent surgery in February, 2004. (Tr. 283).  The surgeon, Dr. Mukut Sharma, described the procedure as "repair of the left tibial plateau with locking plate as well as Norian SRS cement."  (Tr. 147).  His office notes indicate that the plaintiff was started on weight-bearing exercises on February 26, 2004 and was allowed full

weight-bearing with a "quad cane" on May 20, 2004 (Tr. 147, 212). His most recent follow-up note, dated July 22, 2004, states that Mrs. Sizemore was "doing much better, but has a lot of aches and pains." (Tr. 211). She was walking with a cane and had tenderness that the fracture site, but the incision had healed well and range of motion was about 120 degrees. (Id.) The physician noted that Mrs. Sizemore had "other medical problems" and "would have a lot of problems in the knee regarding the arthritis" and might need revision surgery later depending on how much arthritis developed. (Id.). No functional restrictions were given.

A state agency physician, Dr. P. Saranga, reviewed the evidence as of March 30, 2004 and concluded that Mrs. Sizemore could perform "medium" level exertion, could stand and walk six hours and sit for six hours in an eight-hour day with normal breaks, could never climb ladders, ropes, or scaffolds, and could occasionally climb ramps and stairs. (Tr. 178-82). He noted the left tibial fracture and repair on February 11, 2004 and commented that the fracture was in satisfactory position on a follow-up visit.

Dr. Varghese, the treating family physician, prepared a physical residual functional capacity assessment on July 8, 2004, and described Mrs. Sizemore's problems as a recent fracture of the left knee, and chronic pain in the legs and back. He stated that she could lift a maximum of five pounds and "very little" occasionally, could stand two hours "at a stretch," could sit a total of three hours in an eight-hour

day (one hour without interruption), could "never" climb, balance, crouch, kneel, or crawl, and had restrictions on pushing and pulling, heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. (Tr. 149-52).

The ALJ rejected Dr. Varghese's restrictions, citing two reasons. First, he noted that the assessment form appeared to be signed by "N. Varghese," and the treating physician's name was always given in his office notes as "Roy Varghese." (Tr. 18). Second, the ALJ noted that Dr. Roy Varghese's treatment notes dated July 12, 2004, just four days after the medical source statement, showed no tenderness of the spine and back and normal range of motion of all four limbs, normal power in the upper and lower extremities, and a full range of motion. (Tr. 18, 222-3). The plaintiff asserts that this conclusion was error. While the Commissioner now essentially concedes that there was only one Dr. Varghese, he maintains that the physician's office notes do not substantiate the level of restrictions given in the functional capacity assessment, for the reasons cited by the ALJ. The Court agrees. Even though Dr. Varghese was a treating source, the lack of any physical findings regarding the back and legs so soon after preparing a highly restrictive assessment explicitly based on problems in these areas casts doubt on his opinion. Moreover, the assessment by Dr. Varghese was given only a few months after the February, 2004 knee surgery, and the plaintiff has failed to show that restrictions from this

procedure would last for over 12 months. Although the plaintiff points out that Dr. Sharma, the surgeon, had indicated that Mrs. Sizemore "will have a lot of problems in the knee regarding the arthritis" and might need revision surgery later, these comments are speculative, and Dr. Sharma never imposed any permanent functional restrictions. Therefore, a reasonable fact finder could have declined to accept the opinion of Dr. Varghese.[1]

Finally, the plaintiff argues that the ALJ failed in his duty to properly develop the record by obtaining a consultative examination that encompassed post-surgical recovery. The plaintiff argues that the ALJ had a heightened obligation to develop the record because the plaintiff was represented by a non-attorney at the administrative level, citing Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1051 (6th Cir. 1983). However, the Sixth Circuit has declined to hold that the mere fact that a claimant is unrepresented is grounds for reversal. Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 856 (6th Cir. 1986). Unlike the plaintiff in Lashley, who had no representation of any kind and was illiterate and unable to effectively represent himself at the administrative hearing, Mrs. Sizemore had a ninth grade education, appeared to be articulate, was represented by an

---

[1] The hypothetical question did not include Dr. Saranga's restrictions on climbing (Tr. 179), but a review of the Dictionary of Occupational Titles (DOT) suggests that the jobs described by the VE, such as electrical assembler, DOT 729.384-026, and bench assembler, DOT 706.684-042, do not require climbing. Therefore, no useful purpose would be served by remand on this issue.

Sizemore

individual apparently engaged in the business of representing Social Security claimants before the Social Security Administration (Tr. 252, 274) and the ALJ conducted two hearings. (Tr. 272-99). This falls far short of the procedural defects implicated in <u>Lashley</u>. As noted in the Applicable Law portion of this opinion, it is ultimately the plaintiff's burden to prove her own case.

The decision will be affirmed.

This the 4th day of April, 2007.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**